**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JERLON DEMONT MORGAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-CV-466-GKF-tlw** |
| | ) | |
| **JOE M. ALLBAUGH, Director,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Respondent filed a response (Dkt. # 7) to the petition. Petitioner filed a reply (Dkt. # 9). On December 1, 2016, Petitioner filed a motion to amend the petition (Dkt. # 10), respondent filed a response (Dkt. # 11), and petitioner filed a reply (Dkt. # 14). For the reasons discussed below, the petition for writ of habeas corpus is denied. Petitioner's motion to amend is denied.

## *BACKGROUND*

On May 16, 2010, Marcus Lewis died as a result of multiple gunshot wounds sustained at Cheyenne Park, located on North Cheyenne Avenue, in Tulsa, Oklahoma. Two of Lewis's friends, Jarred Miller and Joseph Thomas, were present at the time of the shooting and saw their friend gunned down. Before police arrived at the scene of the shooting, Miller and Thomas conferred and agreed to lie to police about the shooting. Tulsa Police Officers Toliver and Scalf were nearby and heard the shots fired. They arrived at the scene within minutes and were flagged down by Thomas. Officer Toliver attempted to render aid but heard Lewis gasp his last breaths and saw his eyes lose all light. After calling EMSA, Officer Toliver spoke with both Miller and Thomas at the scene and did not consider them to be suspects. Miller and Thomas were transported to the detective division

where they were initially interviewed by Tulsa Police homicide detectives. While speaking to Officer Toliver and during these first interviews with detectives, Miller and Thomas lied and stated that Lewis called them on the phone and told them to come to Cheyenne Park. They also stated that, as they arrived at the park, they heard gun shots and saw two unidentified black males, dressed in all black, run southbound on Cheyenne.

The next day, Miller and Thomas decided to "do the right thing" for their friend, Marcus, and his family and tell the homicide detectives the truth. Both Miller and Thomas were interviewed a second time. This time, Miller and Thomas told detectives that Petitioner Jerlon Morgan and his cousin William Hurt, III, arrived at Ute Park where several people, including Lewis, Miller, and Thomas, were playing dice games. Hurt was driving a white Ford Taurus with dark tinted windows and a black car bra. Lewis and Petitioner had had a disagreement approximately two weeks earlier. After leaving Ute Park, Lewis and Petitioner decided to resolve their disagreement in a street fight at Cheyenne Park. During the fight, Lewis grabbed Morgan's genitals. At that point, Hurt pulled a gun and put it in Lewis's face. Miller tried to defuse the situation, but Lewis was mad and said that pulling the gun was "a weak move." Hurt then started shooting at Lewis, first towards Lewis's feet. Then he moved the gun up to Lewis's waist area. Lewis was hit and dropped to the ground. Hurt ran back to the white Taurus. Miller heard Petitioner say, "finish him." Hurt then returned to Lewis who was lying on his back in the street, stood over him and shot him two more times. Hurt got back in the Taurus with Petitioner and drove away from the scene. Miller and Thomas remained at the scene and asked neighbors to call the police.

As a result of those events, Petitioner Jerlon Morgan and his co-defendant, William Stefvon Hurt, III, were charged, in Tulsa County District Court, Case No. CF-2010-1963, with First Degree

Murder. Petitioner and Hurt were tried jointly. At the conclusion of trial, the jury found both defendants guilty as charged and recommended sentences of life imprisonment. On November 14, 2011, the trial judge sentenced Petitioner, in accordance with the jury's recommendation, to life imprisonment. See Dkt. # 16-1 at 4. Attorney Kathy Fry represented Petitioner at trial.[1]

Represented by attorney Traci J. Quick, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner raised five (5) propositions of error, as follows:

| | |
|---|---|
| Proposition One: | The evidence was insufficient to convict Mr. Morgan of First Degree Murder. |
| Proposition Two: | Mr. Morgan was denied effective assistance of counsel in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma Constitution. |
| Proposition Three: | The trial court erred when it allowed irrelevant and unreliable evidence, in the form of cell phone call logs, to be admitted as evidence against Appellant. The error denied Appellant a fair trial and the due process of law secured to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 2, Sections 7, 19, and 20 of the Oklahoma Constitution. |
| Proposition Four: | Prosecutorial misconduct deprived Appellant of a fair trial in violation of the Fourteenth Amendment of the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution. |
| Proposition Five: | The accumulation of error in this case deprived Mr. Morgan of due process of law in violation of the Fourteenth Amendments [sic] to the United States Constitution and Article II, § 7 of the Oklahoma Constitution. |

(Dkt. # 7-1). In an unpublished Summary Opinion, filed May 17, 2013, in Case No. F-2011-1011 (Dkt. # 7-3), the OCCA denied relief on Petitioner's claims and affirmed the Judgment and Sentence of the district court. Petitioner did not seek post-conviction relief in the state courts.

[1]Attorney Kevin Adams represented Hurt at trial.

Petitioner commenced this federal action by filing a pro se petition for writ of habeas corpus (Dkt. # 1). Petitioner raises three (3) grounds of error, as follows:

Ground 1: In light of the insufficient evidence presented at trial, the conviction for First Degree Murder violated Petitioner's Fourteenth Amendment right to due process.

Ground 2: Trial counsel rendered deficient and ineffective assistance in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Ground 3: Prosecutorial misconduct prevented Petitioner from receiving a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

Id. Respondent argues that the OCCA's adjudication of Petitioner's grounds for relief was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See Dkt. # 7.

***ANALYSIS***

**A. Exhaustion**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented the claims raised in the petition to the OCCA on direct appeal. Therefore, he has exhausted his state court remedies as to claims raised in the petition.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Cullen v. Pinholster, 563 U.S. 170, 184-85 (2011); Williams v. Taylor, 529 U.S. 420 (2000).

**B. Motion to "amend"**

In the motion to "amend" (Dkt. # 10), Petitioner requests that he be allowed to supplement his Ground 2 claim of ineffective assistance of counsel with his own "affidavit," id. at 6.[2] As noted

[2]Citations to documents filed in this case reference the Court's ECF pagination.

by Respondent, see Dkt. # 11 at 1, the "affidavit" is not notarized and is not sworn under penalty of perjury. Petitioner cites to Rule 15(c)(1)(B), Federal Rules of Civil Procedure, and argues that his "affidavit" relates back to the original petition. See Dkt. # 10 at 1. In his "affidavit," dated November 17, 2016, Petitioner claims that trial counsel failed to: "contact and present as alibi witnesses two individuals who were willing to testify as to my whereabouts the night Marcus Miller [sic] was killed." Id. at 6. Petitioner identifies the purported alibi witnesses as his girlfriend, Markisha Bradford, and Markisha's mother, Sheryl Bradford. Id. Petitioner further claims that when he "questioned Ms. Frye's failure to object to what I believed was prosecutorial misconduct by the prosecutor, she failed to provide a rational explanation." Id.

Significantly, however, Petitioner's affidavit was not presented to the OCCA on direct appeal as part of the "application for evidentiary hearing on Sixth Amendment claims."[3] See Dkt. 7-1 at 54-99. Petitioner is advised that a federal district court considering a habeas claim under 28 U.S.C. § 2254(d)(1) is limited to considering the record that was before the state court that adjudicated the claim on the merits. Pinholster, 563 U.S. at 181-82; see also Hammon v. Ward, 466 F.3d 919, 928 (10th Cir. 2006) ("In reviewing the OCCA's adjudication of Petitioner's ineffective assistance of appellate counsel claim, we consider the record as it existed before the OCCA."); Beck v. Rudek, 507 F. App'x 803, 805 (10th Cir. 2013) (unpublished)[4]; Champ v. Zavaras, 431 F. App'x 641, 655 (10th Cir. 2011) (unpublished). Petitioner's "affidavit" was not part of the record before the OCCA

[3]In his "application for evidentiary hearing on Sixth Amendment claims" filed on direct appeal, Petitioner provided the affidavits of five (5) people, including Markisha Bradford and Sheryl Bradford. See Dkt. # 7-1 at 60-68. However, Petitioner did not present his own affidavit to the OCCA on direct appeal.

[4]This and other unpublished opinions are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

and cannot be considered by this Court in resolving Petitioner's habeas corpus claims under 28 U.S.C. § 2254(d)(1). For that reason, Petitioner's motion to "amend" the record in support of Ground 2 with the "affidavit" shall be denied.

In addition, to the extent Petitioner seeks leave to raise new habeas claims in his motion to "amend," including for example Petitioner's claim that trial counsel failed to contact or subpoena alibi witnesses, the request is denied. First, any new claim that was not presented to the OCCA on direct appeal is unexhausted, see 28 U.S.C. § 2254(b). Second, any new habeas claim is now time barred, see 28 U.S.C. § 2244(d)(1)(A) (imposing a one-year limitations period on habeas corpus claims). Although Respondent concedes that the petition was filed prior to the one-year deadline, see Dkt. # 7 at 2, ¶ 5, the pendency of this case does not toll the limitations period, Duncan v. Walker, 533 U.S. 167, 181-182 (2001) (holding that the statute of limitations is not tolled during the pendency of a federal petition). Furthermore, the relation back provision of Fed. R. Civ. P. 15(c) does not apply to save any new claim of ineffective assistance of counsel. United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000). More than two (2) years passed between the filing of the petition and the filing of the motion to "amend." Clearly, the one-year deadline passed long before Petitioner filed the motion to "amend."

**C. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 101-03 (2011); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Richter, 562 U.S. at 103); see also Metrish v. Lancaster, 569 U.S. 351, 133 S. Ct. 1781, 1787 (2013).

In this case, the OCCA adjudicated Petitioner's claims on the merits on direct appeal. Therefore, the Court will review the claims under the standards of § 2254(d).

**1. Sufficiency of the evidence (Ground 1)**

In Ground 1, Petitioner argues that the evidence was insufficient to support a conviction of First Degree Murder. See Dkt. # 1 at 4. Petitioner alleges that the State presented "mounds of unreliable evidence . . . such as testimony from two of the State's star witnesses who were both admitted liars, and whose testimony conflicted with one another during the trial proceedings." See id. at 16. Petitioner identifies the two "star" witnesses as Jarred Miller and Joseph Thomas and claims those witnesses committed perjury. Id. at 17, 23. Petitioner raised this claim on direct appeal. The OCCA denied relief, finding as follows:

> Appellant and his co-defendant were implicated in a murder by two people who knew them well, and who had no known motive for conspiring to fabricate such a serious accusation. The fact that these witnesses did not originally tell police the identity of the assailants (and changed their story the day after the murder) was the subject of vigorous attack by the defense at trial. On the other hand, these witnesses not only corroborated each other, but their testimony was corroborated independently in certain other respects. The credibility of witnesses, and the weight and consideration to be given to their testimony, are within the exclusive province of the trier of facts; because there was competent evidence to support the jury's verdict, we will not disturb it. *Bland v. State*, 2000 OK CR 11, ¶ 29, 4 P.3d 702, 714.

(Dkt. # 7-3 at 2).

In a habeas proceeding, this Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard of review respects the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony presented at trial. Id. Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986). Under the AEDPA, the Court must decide whether the OCCA's

decision that there was sufficient evidence to support a finding of guilt was contrary to, or an unreasonable application of, Jackson. 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Applying the Jackson standard, this Court finds that there was sufficient evidence for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt of First Degree Murder. Under Oklahoma law, Petitioner could not be convicted of First Degree Murder unless the State proved beyond a reasonable doubt the following elements: first, the death of a human; second, the death was unlawful; third, the death was caused by the defendant; and fourth, the death was caused with malice aforethought. See Okla. Stat. tit. 21, § 701.7(A).

In this case, after reviewing the evidence in a light most favorable to the State, the Court finds that the jury's verdict was supported by sufficient evidence. If the jury found Jarred Miller and Joseph Thomas to be credible, then their testimony was sufficient to support the verdict. Although both witnesses admitted they had initially lied to police, they told the jury that their trial testimony was the truth. The testimony of Miller and Thomas was corroborated by the evidence. Multiple witnesses testified that there were two sets of shots fired, just as described by Miller and Thomas, See Dkt. # 8-3, Tr. Vol. III at 667-68, 685, 692. The evidence also supported the testimony of Miller and Thomas that Lewis and Petitioner were engaged in a street fight prior to gun shots being fired. That evidence included bruising on the right side of Lewis's face, see id. at 830, 848; and Lewis having removed his shirt prior to being shot, see Dkt. # 8-4, Tr. Vol. IV at 875. Petitioner also argues that, because the white Ford Taurus purportedly driven by Hurt on the night of the shooting had been sold approximately two months before the shooting, the witnesses' version of events had to have been fabricated. However, as stated above, when examining the sufficiency of the evidence,

this habeas court does not weigh conflicting evidence or consider witness credibility, but asks only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. That standard is satisfied in this case.

In summary, the evidence, when viewed in the light most favorable to the State, was sufficient to allow a rational trier of fact to have found beyond a reasonable doubt that Petitioner was guilty of First Degree Murder. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of Jackson. For that reason, habeas corpus relief is denied on Ground 1.

**2. Ineffective assistance of trial counsel (Ground 2)**

As his second ground of error, Petitioner alleges that trial counsel provided ineffective assistance of counsel in failing to (1) present alibi witnesses and (2) object to prosecutorial misconduct. Petitioner raised this claim on direct appeal. As to Petitioner's claim concerning the presentation of alibi witnesses, the OCCA denied relief, finding as follows:

> Appellant makes several claims of deficient performance against his trial counsel. He has also filed an Application for Evidentiary Hearing, pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, 22 O.S., Ch. 18, App. (2013), which includes documents in support of the ineffective-counsel claims that are not based on the appeal record itself. First, Appellant presents affidavits from persons who were willing to say that he could not have been at the scene of the shooting. Appellant concedes that trial counsel investigated the possibility of presenting these witnesses, but elected, in the end, not to call them. Counsel's strategic choices, made after reasonable investigation, are "virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 2066 (1984); *Underwood v. State*, 2011 OK CR 12, ¶ 82, 252 P.3d 221, 252. Appellant has not overcome the presumption that counsel performed reasonably. *See id.*, 2011 OK CR 12, ¶ 77, 252 P.3d at 250.

(Dkt. # 7-3 at 2-3 (footnote omitted)). After considering other claims challenging trial counsel's decisions concerning witnesses, the OCCA concluded that "Appellant has not shown a strong

possibility that trial counsel was ineffective, to the extent that additional fact-finding on the issue would be warranted. Appellant's request for an evidentiary hearing on his claim of ineffective counsel is **DENIED**." Id. at 3-4 (citation omitted). As to Petitioner's claim concerning counsel's failure to object to prosecutorial misconduct, the OCCA found that the prosecutor did not engage in misconduct and that "trial counsel was not ineffective for failing to object." Id. at 5 (citation omitted).

Petitioner is not entitled to habeas relief on his claim of ineffective assistance of trial counsel unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Pinholster, 563 U.S. at 190 (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

Petitioner bears the burden of demonstrating that the OCCA unreasonably applied Strickland. After careful review of the record, the Court finds Petitioner has failed to make the necessary showing. Although Petitioner concedes that trial counsel investigated the possibility of presenting the alibi witnesses, he claims that counsel's decision not to call these witnesses was "disastrous" and that had the witnesses been called, "it is more likely than not Petitioner would have been acquitted of first degree murder." See Dkt. # 1 at 25. However, because defense counsel did in fact investigate Petitioner's alibi witnesses, her strategic choice not to call the witnesses is "virtually unchallengeable." Strickland, 466 U.S. at 690-91. Furthermore, trial counsel explained during closing argument why she had decided not to call alibi witnesses on behalf of Petitioner, see Dkt. # 8-5, Tr. Vol. V at 1206, demonstrating that the decision was clearly a matter of trial strategy. The Tenth Circuit has repeatedly held that whether to call a particular witness is within the sound discretion of trial counsel. See Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.");

DeLozier v. Sirmons, 531 F.3d 1306, 1324 (10th Cir. 2008) ("Generally, the decision whether to call a witness rests within the sound discretion of trial counsel." (quoting Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998))); United States v. Miller, 643 F.2d 713, 714 (10th Cir. 1981) ("Whether to call a particular witness is a tactical decision and, thus, a 'matter of discretion' for trial counsel." (citation omitted)); United States v. Dingle, 546 F.2d 1378, 1385 (10th Cir. 1976) ("It is a matter of discretion on the part of trial counsel to exercise judgment in the determination of witnesses to be called and the testimony to be elicited."). Petitioner has failed to overcome the presumption that counsel performed reasonably with regard to her decision not to call defense witnesses.

Petitioner also claims that trial counsel provided ineffective assistance in failing to object to prosecutorial misconduct. However, as discussed in more detail below, Petitioner's claim of prosecutorial misconduct lacks merit. Because the claim lacks merit, counsel cannot be faulted for failing to object. See Sperry v. McKune, 445 F.3d 1268, 1275 (10th Cir. 2006) (explaining trial counsel's failure to raise a meritless issue is not ineffective assistance). Furthermore, Petitioner cannot satisfy the prejudice prong of Strickland as to trial counsel's performance because he cannot demonstrate that the result of his trial would have been different had trial counsel lodged objections to the prosecutor's comments.

In summary, Petitioner fails to show the OCCA's denial of his claim of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. His request for habeas relief on Ground 2 is denied.

**3. Prosecutorial misconduct (Ground 3)**

In Ground 3, Petitioner claims that, during closing argument, the prosecutor "deliberately misrepresented the truth in order to influence the verdict of they jury." (Dkt. # 1 at 27). Petitioner

challenges the prosecutor's comments purportedly questioning the validity of the sale of the 1999 white Ford Taurus, as evidenced by a bill of sale. On direct appeal, Petitioner complained that the prosecutor improperly argued that "William Hurt[] either still had access to the white Taurus described by State's witnesses at trial (Tr. V 1178) and/or the sale of the white Taurus was bogus (Tr. V. 1240, 1245)." See Dkt. # 7-1 at 50. Because Petitioner's counsel did not object to the prosecutor's comments, the OCCA reviewed for plain error and denied relief, finding as follows:

> Appellant confuses the act of knowingly presenting false or misleading evidence with the adversarial testing of witness credibility. The prosecutor was not required to accept the credibility of the defense theory, no matter how may witnesses might testify to it, and regardless of whether another person – not called by the defense – could conceivably have testified to similar effect. Counsel are entitled to liberal freedom of speech in arguing competing inferences from the evidence presented. We find no error here, plain or otherwise . . . .

(Dkt. # 7-3 at 5 (citation omitted)).

Prosecutorial misconduct, if it occurs, can "create constitutional error in one of two ways." Matthews v. Workman, 577 F.3d 1175, 1186 (10th Cir. 2009). "First, prosecutorial misconduct can prejudice 'a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). When this occurs, a petitioner need not show that his entire trial was rendered fundamentally unfair. See Dodd v. Trammell, 753 F.3d 971, 990 (10th Cir. 2013). "Second, even if the prosecutor's improper remarks do not impact a specific constitutional right, they may still create reversible error if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Matthews, 577 F.3d at 1186 (quoting Donnelly, 416 U.S. at 643). Under this test, prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly, 416 U.S. at 642-48. To

satisfy that test, a petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, a conviction probably would not have occurred. Thomas v. Cowley, 1991 WL 151773 at *9 (10th Cir. Aug. 8, 1991) (unpublished).

In this case, the record reflects that defense counsel did not object to the prosecutor's remarks. As a result the OCCA reviewed for plain error. Oklahoma defines plain error as "an error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense," Simpson v. State, 876 P.2d 690, 698 (Okla. Crim. App. 1994), and "impinges on the fundamental fairness of trial." Cleary v. State, 942 P.2d 736, 753 (Okla. Crim. App. 1997). "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." Hancock v. Trammell, 798 F.3d 1002, 1011 (10th Cir. 2015); Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (finding "no practical distinction between the formulations of plain error . . . and the federal due-process test, which requires reversal when error so infused the trial with unfairness as to deny due process of law" (citation and internal quotation marks omitted)). When the OCCA rejects a claim "under the plain-error standard, the decision effectively disallow[s] the possibility of a due process violation." Hancock, 798 F.3d at 1011.

Petitioner claims that the prosecutor's comments "caused the jury to question the legitimacy of the Bill of sale." See Dkt. # 1 at 27. However, after reviewing the prosecutor's comments, as challenged on direct appeal, in light of the evidence presented at trial, the Court finds that Petitioner's trial was not rendered fundamentally unfair by either the prosecutor's closing argument or his questioning of co-defendant Hurt's witnesses concerning the bill of sale.[5] As noted by the

[5]Petitioner also claims that "the prosecutor knew that its two key witnesses were not telling the truth when they testified to seeing petitioner in a 'white Ford Taurus with a black bra' on it the night of the murder." See Dkt. # 1 at 28. However, counsel for Petitioner's co-defendant challenged

OCCA, the prosecutor was testing witness credibility as opposed to knowingly presenting false or misleading testimony and his comments were reasonable inferences that could be drawn from the evidence. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2). The request for habeas corpus relief on Ground 3 is denied.

**D. Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable amongst jurists of reason. Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). A certificate of appealability shall be denied.

---

the witnesses' credibility by subjecting them to extensive cross-examination with regard to the white Ford Taurus. See Dkt. # 8-2, Tr. Vol. II at 508-510; Dkt. # 8-3, Tr. Vol. III at 643-646.

## *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.
2. Petitioner's motion to amend (Dkt. # 10) is **denied**.
3. A certificate of appealability is **denied**.
4. A separate judgment shall be entered in this matter.

**DATED** this 3rd day of August, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT